UNITED STATES of America, Plaintiff,

v.

NATIONAL BROADCASTING COMPANY, INC.,
Defendant.

UNITED STATES of America, Plaintiff,

v.

AMERICAN BROADCASTING COMPANIES, INC.,
Defendant.

UNITED STATES of America, Plaintiff,

v.

CBS, INC., Defendant.

Nos. CV74–3601–R, CV74–3600–R and CV74–3599–R.

United States District Court, C.D. California.

Nov. 9, 1993.

Catherine G. O'Sullivan, U.S. Dept. of Justice, Appellate Section, Antitrust Div., Nancy C. Garrison, U.S. Dept. of Justice, Appellate Section, Maureen T. Casey, Dept. of Justice, Antitrust Div., Washington, DC, for U.S.

Frederick L. McKnight, Jones, Day, Reavis & Pogue, Los Angeles, CA, Joe Sims, Jones, Day, Reavis & Pogue, Washington, DC, for CBS, Inc.

James J. Popham, Washington, DC, for Ass'n of Independent Television Stations, Inc.

Diane S. Killory, Morrison & Foerster, Michael R. Gardner, Washington, DC, for Coalition to Preserve the Financial Interest and Syndication Rule.

## OPINION

REAL, Chief Judge.

Defendants NATIONAL BROADCASTING COMPANY, INC. (NBC), AMERICAN BROADCASTING COMPANIES, INC. (ABC) and CBS, INC. (CBS) have jointly moved for approval of a modification to delete from the antitrust consent judgments entered in 1978 in the NBC matter and in 1980 in the ABC and CBS matters sections IV and VI A. The plaintiff UNITED STATES OF AMERICA (USA) has consented to the requested modifications.

Section IV prohibits NBC, ABC and CBS from acquiring financial interests or proprietary rights in non-network uses of television programs produced by others or from engaging in the domestic syndication business.

Section VI A prohibits NBC, ABC and CBS from conditioning or tying the purchase of network rights to a program upon the supplier's grant of any other right or interest to the NBC, ABC or CBS.

These prohibitions were part of the rules adopted by the FEDERAL COMMUNICATIONS COMMISSION (FCC) in 1970 referred to by the acronym FIN–SYN rules 47 C.F.R. § 73.658(j) (1991).

In May 1991 the FCC by a vote of 3–2 issued a modification of the FIN–SYN rules permitting networks to acquire financial and syndication interests in network prime-time entertainment programs produced in-house, co-produced with a foreign producer, co-produced with a U.S. producer, and produced by an independent producer. These interests were limited however to no more than 40 percent of a network's prime time programming. The May 1991 FCC modifications continued to prohibit the syndication of any first-run non-network programming or programs obtained from outside producers to television stations within the United States 47 C.F.R. § 73.660 (1991).

Under the 1991 FCC rules NBC, ABC and CBS could solely produce or co-produce 40% of its prime time programming, and may retain financial interests and active syndication rights, both domestic and foreign, in those productions. Section IV of the consent judgments prohibits NBC, ABC, or CBS from taking advantage of the new rules. The changes in the FIN–SYN rules were urged by both the Department of Justice and the Staff of the Bureau of Economics of the Federal Trade Commission.

As the result of the 1991 action of the FCC modifying its FIN–SYN rules and what the parties perceive as dramatic changes in the television industry they have filed these motions requesting the consent decrees in these cases be aligned with the 1991 FCC rules.

Since the filing of these motions the Seventh Circuit in an opinion by Judge Posner has abrogated the 1970 FIN–SYN rules, leaving intact the abrogation of the FIN–SYN rules of the 1991 report. See *Schurz Communications, Inc. v. FCC,* 982 F.2d 1043 (7th Cir.1992).

On May 7, 1993, the FCC issued its second report on amending the FIN–SYN rules. Copies of this second report were filed with this court on May 11, 1993. Paragraph 1(k) of the FCC's 1993 Second Report and Order eliminate "these remaining finsyn restrictions two years after entry of an order by the U.S. District Court, Central District of Cali-

fornia (District Court) granting the networks' motions to modify certain restrictions of the consent decree that now limit their participation in the financial interest and syndication areas." With all these matters presented to the court it would appear that the motions of each of the defendants NBC, ABC and CBS should be granted. But that does not end the matter. This court must and has considered all the submissions by counsel on each side, the government, those who have moved for intervention and those commenting on the proposed modifications to the consent decrees.

The parties have pressed on the court that the competitive position of each of them has been materially changed because of the dramatic changes in the television industry. This certainly must be one of the considerations that must be addressed by any judge considering an amendment to a consent decree, particularly one that addresses the concerns of the FCC and Justice Department considering the competitive status of the parties in today's television market.

The complaints against NBC, ABC, and CBS were filed in 1974 on charges of attempting to monopolize in two alleged relevant markets—1. national prime time network prime time entertainment programs and 2. each network's own prime time entertainment schedule. At that time the FCC had already enacted its order on FIN–SYN matters of financing and syndication. It was in adopting the FIN–SYN requirements of 1970 that the government and NBC, ABC and CBS agreed to the entry of a consent judgment. The consent judgment was approved and entered by Judge Robert J. Kelleher in 1978 in the NBC action and in 1980 in the ABC and CBS matters containing Sections IV and VI A now requested to be deleted.

The 1970s was the embryonic development of cable television. Up to that time what little cable television existed was struggling with strict limitations on receiving distant broadcast signals, high distribution costs and a virtual prohibition on pay programs (Declaration of Robert W. Crandall, Paragraph 14, March 6, 1992). By 1990 the total number of cable systems increased to 10,000 with sub-scribers numbering 56.1 million. Cable networks have developed over this period of time to where they now number more than 70. There are 6 major premium movie networks, 8 pay-per-view networks and at least 24 regional sport networks.

Since 1978 the Fox network has been added to the competition for the prime-time audience. During the 1991 super season (May to September) Fox's prime time audience share was 12.0 compared to the 18.2 audience share of NBC, ABC and CBS. (Declaration of Robert W. Crandall, paragraph 19, March 6, 1992).

Videocassette with its emergence in 1980 and change from merely a copying device to a primary entertainment vehicle and the introduction of satellite dishes has increased the competitive climate in T.V. viewing. The *New York Times* of November 2, 1991, *Broadcasting*, October 21, 1991, p. 23, 32, *Electronic Media*, October 21, 1991, p. 2 and the *Los Angeles Times*, August 8, 1991, p. A16 have all speculated in somewhat pessimistic terms about the future of commercial television.

When all is said and done about the changes in the television industry since 1980 it can hardly be said that 34 percent—or an average slightly more than 11 percent for each of NBC, ABC or CBS amounts to monopsony power, the predicate of the consent judgments.

I have just inherited this case. In preparation for a determination of the public interest inquiry Judge Robert J. Kelleher ordered notice for public comment to be published in (1) two consecutive issues of the national edition of the *Wall Street Journal*, (2) two consecutive issues of *Variety* and (3) two consecutive issues of *Broadcasting*. Those notices have prompted two requests for intervention—1. State of California and Governor Pete Wilson (STATE) and 2. Coalition to Preserve the Financial Interest and Syndication Rule (COALITION). These requests have been ruled upon by Judge Robert J. Kelleher in orders denying intervention. I have reviewed those motions and now adopt the orders of Judge Kelleher in making the rulings on the motions presented by NBC,

ABC and CBS. The proposed intervenors have moved for a stay pending appeal of Judge Kelleher's denial of their motions to intervene. Judge Kelleher has denied those motions. I have reviewed the motion for stay pending appeal and now adopt Judge Kelleher's denial of the motions.

The notice also prompted comments by The State of California and Governor Pete Wilson, Tone, Larry Ellis Reed, Allen A. Evans, Del Mar Group, King World Productions, Inc., Children's Television and Henry Geller, Representatives of 15 labor organizations, Robert Evans, Staff of The Bureau of Economics of the Federal Trade Commission, The Coalition To Preserve The Financial Interest and Syndication Rule, and the Association of Independent Television Stations.

I have considered both the materials presented upon the motions of STATE and COALITION and the comments of each of the submitters.

All the submitters seem to agree with the USA, NBC, ABC and CBS that there have been dramatic changes in the television industry in the past twenty years. How the different factions assess these changes in connection with their own interest in Sections IV and VI A varies considerably. USA, NBC, ABC and CBS view these changes as significantly changing the competitive climate in the industry as eliminating the monopsony power of the networks in the acquisition of television programming and the monopoly power in syndication to justify the elimination of Sections IV and VI A from the consent judgment.

Neither STATE nor COALITION, the primary commentors, have provided the court with evidence or argument that NBC, ABC, or CBS individually have sufficient monopsony power to affect the market anti-competitively in the production of television programming. Both STATE and COALITION seem to rely on their view that NBC, ABC and CBS each have monopoly power and will or as they put it have the incentive to exercise it in syndication particularly in domestic syndication by "warehousing" and affiliate favoritism. Oligopoly may make collusion easy but it does not follow that members in an oligopolistic industry necessarily collude on anything. What is obvious in today's TV market is that NBC, ABC and CBS are fierce competitors for advertising dollars and viewer loyalty. The supposition or accusation that incentive must necessarily mean collusion is, like so many things in life, regrettable since the proof of denial is always difficult and met with so much suspicion. The government has explicitly disavowed any allegations of collusion in the original case 459 F.Supp. 832, 836 (C.D.Cal.1978) and now claims to have no evidence, overt or tacit, of collusion between NBC, ABC and CBS. Without evidence the public interest is not served by such self-serving suppositions.

Syndication is claimed by STATE and COALITION to be a relevant sub-market of each individual network defendant and therefore ipso facto each network has a monopoly in this sub-market. The USA and Federal Trade Commission (FTC) each question such a claim. The evidence presented in the comments by STATE and COALITION are certainly inconclusive on this issue. Even if a network controlled all of the syndication of its network programming—an assumption not at all that clear in light of the entry of the Fox network and the increase in cable television stations, the increased competition of independent TV stations and the tremendous source of program production—it appears that not a single network would control a sufficient share of the market to exercise monopoly power.

Each of the comments made by STATE and COALITION were arguments made to the FCC when the FCC was considering the FIN–SYN rules in 1990–1991. They were rejected then evidenced by the action of the FCC in eliminating the provisions of Section IV and VI A from the ordered 1991 FIN–SYN rules.

KING WORLD a self described "leading producer and distributor of first-run syndicated programming" comments on the failure of the USA to consider first-run syndication in its agreement to support the removal of Sections IV and VI A from the consent decree. Since the first-run programming was not a focus of the original litigation it is no

more than speculation of what effects the removal of Sections IV and VI A would have on first-run programming. Except for the argument of monopoly power that the court now eschews in light of the paucity of any evidence to support the argument there is no other concern for the public interest raised by KING WORLD. Since the consideration of the consent decree in the first instance did not address KING WORLD'S concerns it seems that what KING WORLD now proposes is a new trial on the antitrust effects of what will be new entries into first-run syndicated programming vis-a-vis first-run programming with all the attendant concerns of—without evidence—market, market power and monopoly necessary to determine a practice not yet in existence. Such an argument does not address the public interest but rather the competitive concern of an individual participant in the universe of television programming.

Other comments of Tone, Allen A. Evans, Larry Ellis Reed, and the Del Mar Group address with varying degrees of precision the public interest in modification of the consent decrees from a personal point of view. They add nothing to the opposition to modification.

Important in the support of the modification to a thorough review of the monopsonic and monopolistic viewpoint is the support of the Federal Trade Commission through its staff of the Bureau of Economics. It pointedly says ["The principal justification for the Fin–Syn rules has been that they present the exercise of monopsony and monopoly power by the networks. Our analysis suggests that whatever degree of monopsony power possessed by the networks, constraining the degree of vertical integration likely *increases*, rather than decreases, the attendant welfare losses. Concerning the monopolization issue, we cannot rule out, as a theoretical matter, the possibility that the networks might attempt to create market power in the market for off-network programming. However, available empirical evidence does not provide a compelling basis for believing that the risk of monopolization is sufficiently great that the structural safeguards embodied in the Fin–Syn rules are required. Taking into account the potential costs of the rules, which

consist mainly of the foregone efficiencies from the prohibited arrangements, the justification for the continuation of the rules seems to us questionable."]

As it is with all theory it becomes reality only by practice. If reality of monopsony or monopoly should appear, the USA with its many organizations dedicated to the public good and private attorneys general, with the aid of the courts, can meet the challenges presented by such conduct.

Further support comes from Action For Children's Television, Henry Geller, and a letter signed by 13 trade unions, National Council on the Aging, Inc. and the Airline Pilots Association all urging modification of the consent judgments by elimination of the FIN–SYN provisions of section IV and VI A for the benefit of television consumers.

In *Schurz Communications Incorporated v. Federal Communications Commission*, 982 F.2d 1043 (7th Cir.1992) the court considered the FCC's 1991 promulgation of the FIN–SYN rules by the F.C.C. In Schurz the court vacated the order adopting the FIN–SYN rules of 1991 on the grounds the FCC had acted arbitrarily and capriciously in its consideration of the amendment FIN–SYN rules. Excepted from the vacation of the rules was the repeal of the financial interest and syndication rules which were the basis for Section IV and VI A of the consent decree.

Unlike the 7th Circuit's admitted inability to determine with absolute precision the anti-competitive effects of the FIN–SYN rules, see Schurz pp. 1051–1053, so also I believe the logic of restricting markets to aid competition is flawed. It is eminently possible that even in 1970 the anti-trust theory applicable to the FIN–SYN rules was flawed. That is not before me now but certainly in 1993 with the entry of the Fox network, the substantial rise in the number of program producers, the dramatic increase in cable television stations and the development in the sophistication of VCRs the competitive climate today would unfairly penalize NBC, ABC and CBS in the financing and syndication of off-network programming.

The motion of each of the defendants NBC, ABC and CBS for deletion of section IV and VI A is granted.